JOHN H. CATON *vs.* MAX L. GRANT *et al.*

JUNE 9, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is an action in assumpsit to recover certain moneys alleged to have been retained by defendants in excess of the charges lawfully authorized to be made upon certain loans to the plaintiff. The case was tried before a justice of the superior court sitting without a jury and decision thereupon was rendered for the defendants. The case is before us upon the plaintiff's exceptions to that decision and to two evidentiary rulings.

The declaration is in four counts. The first and second counts are based upon an alleged violation of the usury statute, general laws 1938, chapter 485. The fourth count consists of the common counts, particularly relying upon that of money had and received by the defendants in excess of the plaintiff's total indebtedness under an alleged contract. The third count was expressly waived. Admittedly the defendant Mary Investment Company is controlled by Max L. Grant, to whom reference will be made as the real defendant.

The evidence is undisputed that the plaintiff had borrowed various sums of money from the defendant at different times and that these loans were evidenced by six written instruments called promissory notes. These were executed by the plaintiff and were payable to the defendant, and on July 15, 1932 the former's total indebtedness thereon was $14,894.35. The defendant then held, as collateral security for this indebtedness, a second mortgage in the sum of $5000 made by plaintiff upon his own home on Arnold avenue in the city of Cranston and also assignments by him of two other mortgages. On one of these mortgages, which was made by Industrial Dyestuff Company to the plaintiff, the original principal of $20,000 had been reduced by payments to $17,500; and on the other, which was made by Capitol

Oil Company to the plaintiff, the original amount of $19,000 had been similarly reduced to a balance of $3900.

As to the other facts, there was a substantial conflict. The evidence for the plaintiff tended to show that in July 1932 he agreed orally with the defendant that the latter should thereafter collect the principal and interest payments on the two assigned mortgages above mentioned; that, after deducting interest at the rate of 8 per cent per annum and a bonus or service charge at the rate of 10 per cent per annum for the renewal of the loans, defendant should apply the net collections in reduction of plaintiff's indebtedness; and further that he should pay to plaintiff any surplus so collected over the total amount thus due.

Plaintiff's evidence further sought to prove that the defendant shortly thereafter entered the transaction upon his books, showing an actual profit of $6121.30; and that over a period of years he had collected and retained in full the amounts due upon these two mortgages that were held as collateral security. The plaintiff claimed first that the difference between the total amounts so collected and the plaintiff's total indebtedness was clearly in excess of the charges permissible under G. L. 1938, chap. 485, § 2; and secondly that in any event such amount was more than defendant lawfully could retain under his alleged contract.

On the other hand, the defendant's evidence showed that the plaintiff, on August 12, 1932, was in default on several of the six promissory notes; that the stock market was dropping and plaintiff was being pressed by a broker creditor; that the city of Cranston was threatening to sell his house for unpaid taxes; that the defendant then demanded the amount due and told the plaintiff to refinance himself elsewhere; that the plaintiff apparently was unable to get such refinancing and offered to relinquish all of his right, title and interest in the two mortgages held by defendant as security, if the latter would cancel his entire indebtedness on all promissory notes, pay him $500 to take care of his taxes, and also discharge the second mortgage upon plaintiff's home; that

this offer was refused, but that defendant later agreed to cancel the total indebtedness and discharge the mortgage on plaintiff's home in return for a release of all the latter's right, title and interest in the two assigned mortgages.

Defendant's evidence also showed that plaintiff then executed a special release, under seal, of all his right, title and interest in these two assigned mortgages; that the plaintiff read and said he understood its provisions; that the effect of it was further explained to him by the attorney who witnessed it; that as a result thereof the defendant then cancelled the plaintiff's total indebtedness, returned to him the six promissory notes, and discharged the mortgage on his home.

The plaintiff admitted that he executed this release and that he fully understood its contents. But he contends that it was intended to be given and was given to the defendant merely to provide the latter with authority to enable him to collect principal and interest payments on these two mortgages, since plaintiff had previously been collecting them, although the mortgages were held by defendant as collateral security. Plaintiff also admitted receipt of the discharged mortgage on his home but denied receiving the return of the notes. The defendant's books showed that plaintiff's indebtedness was cancelled and new accounts were set up against the Industrial Dyestuff Company and Capitol Oil Company, respectively.

We have examined the evidence and contentions of the parties and we are of the opinion that the controlling question in the case is one of fact to be decided upon conflicting evidence and the credibility of the witnesses. If we credit the plaintiff's claim that there was a contract providing for payment of his indebtedness to defendant, plus interest at the rate of 8 per cent and a bonus at the rate of 10 per cent, no question of usury comes into the case, under G. L. 1938, chap. 485, § 2, as the first two counts of the declaration alleged. On the other hand, the evidence is conflicting upon the question whether the transaction was actually the con-

tract as claimed by the plaintiff, or was a different transaction whereby plaintiff salvaged his home and settled a total indebtedness by assigning and releasing his interest in the collateral securities at less than their face value.

The trial justice believed and credited the defendant's evidence rather than that of the plaintiff. There is at least one material fact which prevents our holding that his decision was clearly wrong. The plaintiff admitted that he had received from defendant a discharge of the mortgage on his home. This was a part of the collateral security demanded by defendant when plaintiff apparently was not in default. If it had been intended that plaintiff continue to be owner of the assigned mortgages and that the relationship of debtor and creditor be retained, notwithstanding plaintiff's admitted default, it is difficult to explain why the defendant would then have discharged this mortgage, thus giving up an important part of the collateral security which he had insisted upon when plaintiff was not in such default. The plaintiff made no attempt to reconcile this admitted fact with his general contention and no reasonable explanation occurs to us.

This discharge, added to evidence of cancellation of the plaintiff's entire indebtedness, the return of all notes and plaintiff's admitted execution and full understanding of the release of his interest in the two assigned mortgages, which was believed by the trial justice, make it difficult for us to say that his decision upon the conflicting evidence was clearly wrong.

The plaintiff also contends that the trial justice misconceived the evidence upon the second count. This relates solely to a loan of $1200 on which plaintiff alleges that deductions amounting to $368 were made unlawfully in advance for interest and service charges. The particular item questioned is one of $250 which the plaintiff claims was made as a part of the charges upon that loan. The defendant's evidence, however, showed that this sum of $250 was deducted as a service charge not upon that loan but rather

for the extension of the due date on an entirely different loan. If the defendant's version is correct, as the trial justice apparently believed, there is no merit in this contention of the plaintiff.

The plaintiff, by his other two exceptions, raises questions concerning the admissibility of certain evidence. We have examined these questions and we are of the opinion that their exclusion, even if erroneous, was not so prejudicial as to warrant the reversal of the decision.

The plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Fergus J. McOsker,* for plaintiff.
*Sherwood & Clifford, Sidney Clifford,* for defendant.